George **LOPEZ**, Petitioner,

v.

Thomas C. **SANDERS**, Respondent.

No. 03 Civ. 1445(VM).

United States District Court,
S.D. New York.

Jan. 21, 2004.

George Lopez, Raybrook, NY, Pro se.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* petitioner George Lopez ("Lopez"), imprisoned after pleading guilty to attempted arson, petitions this Court for a writ of habeas corpus on the ground that his sentence was imposed in violation of the Constitution's Due Process Clause. Specifically, he argues that the trial court's determination that he breached his plea agreement with the government (resulting in a higher sentence than otherwise) violated his right to due process because the trial court made that determination without holding an evidentiary hearing. The Court concludes that this claim is procedurally barred from habeas review, and, in the alternative, that the trial court's determination was not contrary to, or an unreasonable application of, clearly established federal law. The petition is denied.

### I. BACKGROUND [1]

Manhattan hardware store owner Leonard Kesselman enlisted Victor Hernandez to find an arsonist to set fire to a competitor's hardware store. Hernandez secured the cooperation of Lopez, who agreed to do the job for $4,000. At about 3:00 a.m. on the morning of October 21, 1995, Lopez hurled a Molotov cocktail [2] into a window of the competitor's hardware store, located on the first floor of a residential building on Ninth Avenue in Manhattan.

Authorities arrested Lopez in short order, and he confessed in a written statement. In that statement, Lopez stated that he spoke in person to both Hernandez and Kesselman about the arson, and that he called to alert Kesselman a few days before the crime. Lopez plead guilty to first degree attempted arson in New York state court on December 9, 1996. Under a plea agreement with the New York County District Attorney's office (the "DA"), Lopez agreed to cooperate with the DA and to provide truthful information, in exchange for the DA's recommendation of a sentence of six to 12 years' imprisonment. The agreement noted that Lopez faced a maximum of 12 1/2 to 25 years' imprisonment, and that the DA might recommend that sentence if Lopez breached the agreement.

At a hearing in May 1998, the parties appeared before the trial court in a dispute as to whether Lopez had complied with the agreement. According to the DA, Lopez changed his story after entering the plea agreement, rendering his cooperation useless. Specifically, the DA stated that, on Lopez's new version of the events, Lopez dealt only with Hernandez (not Kesselman), thereby making Lopez useless in assisting a federal prosecution of Kesselman. The DA mentioned one incident in which Lopez, even after having pled guilty, denied any involvement in the crime. The DA emphasized that Lopez's multiple changes of story would make him a poor witness, in any event. Lopez's attorney,

---

**1.** The factual summary derives from documents in the trial court record of *People v. Lopez*, Indictment 10735/95, N.Y. Sup.Ct., N.Y. County, specifically the plea allocution of December 9, 1996, the hearing transcript of May 27, 1998 ("Hearing Tr."), and the sentencing transcript of July 6, 2000, as well as undisputed factual representations in the parties' briefings. Except where necessary, the Court will not cite these sources further.

**2.** A Molotov cocktail is "a crude bomb made of a bottle filled with a flammable liquid (as gasoline) and usu[ally] fitted with a wick (as a saturated rag) that is ignited just before the bottle is hurled." *Meriam–Webster's Collegiate Dictionary* 749 (10th ed.1998).

James Palumbo, insisted that Lopez had changed his story *before* the plea agreement, and that the DA knew all along that Lopez would not be able to implicate Kesselman. According to Palumbo, Lopez's change of story was, in fact, a "big issue" in the plea negotiations which "almost resulted in the deal not going through." Hearing Tr. at 16, 19. Palumbo conceded that, after pleading guilty, as part of a "momentary lapse," Lopez had denied committing the crime. However, Palumbo emphasized that Lopez was acting under threats to his family and that he immediately retracted that statement. The judge instructed the parties that, unless they could resolve the issue between themselves, the court would have to hold a factual hearing to determine whether Lopez breached the agreement.

The parties returned to the trial court in July 2000, having reached an oral agreement to avoid an evidentiary hearing. Under the new agreement (whose terms are not exactly clear from the record), Lopez would face six to 12 years' imprisonment if Lopez assisted in the prosecutions of Kesselman and Hernandez, nine to 18 years' imprisonment if he assisted in the prosecution of Hernandez only, and 10 to 20 years' imprisonment otherwise. Palumbo emphasized that Lopez's potential testimony could implicate Hernandez (who then had not been convicted or sentenced) and urged the court to sentence Lopez to nine to 18 years' imprisonment. The trial court sentenced Lopez to 9 3/4 to 19 1/2 years' imprisonment.

On appeal, Lopez argued that the trial court should have held an evidentiary hearing to determine whether he had, in fact, breached the plea agreement because he would have otherwise been entitled to the DA's recommendation of only six to 12 years' imprisonment. He argued that he was denied the benefit-of-the-bargain with respect to his plea agreement because the trial court simply credited the DA's version of events on a sharply disputed issue, without the benefit of testimony. Lopez argued that the purported oral modification of the plea agreement violated the express terms of the agreement, which forbids modifications unless in writing and signed by all of the parties. The DA responded that (1) Lopez waived the issue by failing to ask the trial court for a hearing; (2) a hearing was not necessary, as the trial court had an adequate record from which to determine the issues; (3) by the terms of the plea agreement, it was up to the DA's sole discretion to determine Lopez's compliance; and (4) the oral agreement need not have been in writing because it was within the parameters outlined in the written plea agreement.

A panel of the New York State Supreme Court, Appellate Division (the "Appellate Division"), rejected Lopez's appeal in a short memorandum order. *See People v. Lopez*, 290 A.D.2d 323, 735 N.Y.S.2d 781 (1st Dep't 2002). The panel held that the issue of whether an evidentiary hearing was necessary "was not preserved for appellate review since defendant neither requested such a hearing nor moved to withdraw his plea of guilty." *Id.* Alternatively, the panel held that "the record ... fully supports the [trial] court's finding that defendant violated the terms of the agreement." *Id.* Moreover, the panel concluded that "the cooperation agreement clearly provided that it was up to the People to determine whether defendant's cooperation was satisfactory" and that "there was no improper modification of the [plea] agreement." *Id.* The New York Court of Appeals denied Lopez's petition for leave to review the decision. *See People v. Lopez*, 97 N.Y.2d 757, 742 N.Y.S.2d 617, 769 N.E.2d 363 (2002) (Table). Lopez then timely brought the present habeas petition.

## II. STANDARD OF REVIEW FOR A HABEAS PETITION

█ Generally, a petitioner is entitled to habeas relief if he can show he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). The purpose of federal habeas review of state court convictions is to "assure that when a person is detained unlawfully or in violation of his constitutional rights he will be afforded an independent determination by a federal court of the legality of his detention, even though the issue may already have been decided on the merits by a state tribunal." *United States ex rel. Radich v. Criminal Court of New York*, 459 F.2d 745, 748 (2d Cir.1972).

The petitioner must demonstrate that he is in custody because of a state court decision which was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

On habeas review, a "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

█ "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this case, Lopez defaulted his federal due process claim under New York procedural rules because, as the Appellate Division panel stated, he "neither requested such a hearing nor moved to withdraw his plea of guilty." *Lopez*, 735 N.Y.S.2d at 781; *see also* N.Y.Crim. Proc. Law § 470.05(2) (stating criteria for preserving error); *People v. Messina*, 131 A.D.2d 788, 517 N.Y.S.2d 75 (2d Dep't 1987) (declining to review the issue of whether a hearing was required to determine appellant's compliance with plea agreement because appellant neither requested a hearing nor moved to withdraw his plea). In fact, the sentencing transcript makes clear that both parties affirmatively chose to avoid a hearing by striking an alternate agreement. Lopez reaped the benefit of that choice by being sentenced to less than the statutory maximum.

Lopez now contends that the waiver was ineffective because it violated the terms of the plea agreement.[3] This does not amount to "cause" excusing a procedural default. In *Murray v. Carrier*, the Supreme Court explained that "cause" for procedural default "must ordinarily turn on whether the prisoner can show that

---

3. Lopez, proceeding *pro se*, incorporates his direct appeal brief by reference in his habeas petition. The direct appeal brief, unsurprisingly, does not speak directly to the "cause and prejudice" issues which are unique to the habeas context. Instead, the brief argues why the issue was not forfeited as a matter of New York state procedural law. On this and other issues, the Court, in an attempt to generously construe Lopez's filing, will apply and construe his arguments, to the extent possible, to the habeas context.

some objective factor *external to the defense* impeded counsel's efforts to comply with the State's procedural rule." 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis added). The Court noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or a showing that the prosecution interfered with the petitioner's compliance would suffice. *Id.* Here, Lopez, through his lawyer, *explicitly agreed* to forego a hearing. Even assuming that the oral agreement violated the terms of the plea deal (which is far from settled), Lopez puts forth no reason why he or his lawyer did not object to the oral agreement before the trial court. The most likely explanation is that they affirmatively sought the oral agreement as a way to ensure the lowest possible sentence for Lopez.[4]

In any event, even if Lopez could make a showing of "cause" for the failure to request a hearing, he fails to put forth any reason to believe he has been prejudiced. That is, he demonstrates no reason why the trial court would not have actually given him a *higher* sentence had the court gone forward with a full hearing. Lopez also puts forth no reason why "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Accordingly, Lopez's claim is procedurally defaulted and therefore cannot be the basis for habeas relief.

■ The Court finds, in the alternative, that Lopez's substantive claim for relief is without merit. Lopez's right to enforce his plea agreement at his sentencing is certainly a Fourteenth Amendment "liberty interest," whose "termination calls for some orderly process, however informal," under the Due Process Clause. *See Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1982) (holding that parolee's right to not have parole revoked is a protectable liberty interest); *see also United States v. Fatico,* 579 F.2d 707, 711 (2d Cir.1978) ("The Due Process Clause is plainly implicated at sentencing."). The Supreme Court has emphasized that due process is " 'flexible and calls for such procedural protections as the particular situation demands.' " *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quoting *Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593). Lopez points to no Supreme Court case (nor could the Court find one) holding that, under the Due Process Clause, disputed factual issues regarding plea agreement compliance must be resolved in a full-blown hearing. The issue is thus whether, on the facts of this case, the trial court afforded Lopez the process he was due under the Constitution at sentencing.

■ Generally, due process does not require the same heightened procedural safeguards for sentencing purposes as a criminal trial. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding the use of a lower standard of proof at sentencing than at trial); *Williams v. State of New York,* 337 U.S. 241, 252, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (upholding the use of hearsay at sentencing). However, as explained above, some process at sentencing is nonetheless mandated by the Due Process Clause. On this point, the closest analogous case is *Torres v. Berbary,* 340

---

4. Lurking in the shadows of Lopez's argument is, perhaps, the suggestion that Lopez's trial counsel was ineffective for having made an oral agreement, arguably in violation of the written plea agreement. The Court notes that Lopez never made this argument on direct appeal (in which he had a different lawyer than before), nor does he make that argument here.

F.3d 63 (2d Cir.2003), in which a Second Circuit panel held that a re-sentencing proceeding failed the due process test, and ordered that habeas petitioner Daniel Torres ("Torres") be released unless the state provided a new hearing. Torres pled guilty to a felony drug charge and, in accordance with a plea agreement, he was conditionally released to a drug treatment facility, instead of prison. *Id.* at 64. Under the agreement, if he successfully completed the drug treatment program, he would re-plead guilty to only a misdemeanor and be sentenced to time served. *Id.* The drug treatment facility discharged Torres for attempting to bring drugs into the facility, and, despite Torres's protestations of innocence, the state court sentenced him to 4 1/2 to 9 years' imprisonment. *Id.*

The Second Circuit held that, since the trial court's determination rested upon a "a single report replete with multiple levels of hearsay and speculation," Torres's right to due process was violated. *Id.* at 71. The Circuit Court panel relied upon Supreme Court decisions which mandated a certain level of process, including some procedures in particular, when state officials revoke parole, *see Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593, or when state officials determine that a prisoner has committed "serious misconduct" and thereby deny the prisoner "good-time" credits, *see Wolff v. McDonnell,* 418 U.S. 539, 563–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See Torres,* 340 F.3d at 71. The panel concluded that "well-settled and clearly established Supreme Court due process jurisprudence or, at the very least, a reasonable extension of it, mandates a finding of denial of due process in Torres'[s] sentencing." *Id.* However, the panel was careful to limit its holding to the "unique" facts of the case, namely:

> total reliance by the trial court on a hearsay report that itself contains only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to reasons for the nondisclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres' wrongdoing; and the gross disparity between a sentence that would release Torres to society on a plea to a misdemeanor charge after completion of the [drug treatment] program and the four-and-a-half-to-nine-year felony sentence to state prison that he received for violating the original sentence condition.

*Id.* In this case, unlike the situation in *Torres,* the trial court *did* have a reasonable basis to determine that Lopez had violated his plea agreement – namely, that Lopez admitted, at the very least, to having denied involvement in the crime at all, after having pled guilty to the crime. Moreover, also unlike in *Torres,* Lopez agreed that it would be up to the DA to determine whether he had fully cooperated.[5] Faced with these facts, the Court concludes that the state trial court did not need, as a matter of due process, to conduct a further hearing to determine Lopez's compliance. In any event, the trial court's decision was not an *"unreasonable application of, clearly established* Federal

---

**5.** Although Lopez challenges this reading of the plea agreement, the language could hardly be more clear: "At such time as this office" – *i.e.,* the District Attorney's office – "determines that George Lopez has provided full and complete testimony and/or such cooperation and testimony are no longer needed in any manner, this office will seek to have George Lopez sentenced upon his pleas of guilty as described in paragraph five above." Habeas Pet. Ex 4.

law, as determined by the Supreme Court of the United States...." 28 U.S.C. § 2254(d) (emphasis added). Lopez's petition must therefore be denied.

## IV. *ORDER*

For the reasons stated, it is hereby

**ORDERED** that the petition of George Lopez ("Lopez") for a writ of habeas corpus is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

As Lopez has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253; *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000).